JUDGE SWEET

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

15 CV 03362

------------------------------------------------------------------X   Civil Action No.:

FERNANDO DOUGLAS,

                        Plaintiff,

          – against –

NYU LANGONE MEDICAL CENTER,
NYU SCHOOL OF MEDICINE,
1199SEIU UNITED HEALTHCARE WORKERS EAST,
MARK RAYMOND and BRIAN IMPERIALE,

                        Defendants.

------------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL REQUESTED**

RECEIVED
APR 30 2015
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff, FERNANDO DOUGLAS ("Plaintiff"), by his attorneys, Law Offices of Yale Pollack, P.C., as and for his Complaint against Defendants, NYU LANGONE MEDICAL CENTER, NYU SCHOOL OF MEDICINE, 1199SEIU UNITED HEALTHCARE WORKERS EAST, MARK RAYMOND and BRIAN IMPERIALE, alleges as follows:

**PRELIMINARY STATEMENT**

1. This is an action for disability discrimination, retaliation, violation of a collective bargaining agreement and breach of duty of fair representation by Plaintiff against his former employer, Defendants NYU School of Medicine, a component of NYU Langone Medical Center (collectively referred to herein as "NYU"), supervisors, Defendants Mark Raymond and Brian Imperiale (the "Individual Defendants"), and union, Defendant 1199SEIU United Healthcare Workers East (the "Union").

2. Plaintiff is a sixty-eight (68) year old asthmatic, which he discovered after suffering an attack based on the working conditions he was subjected to while working at NYU. After fourteen (14) years of dedicated service, NYU began demanding that Plaintiff work mandatory overtime, which was not an essential function of his job. At the time it made the demands, NYU

was in possession of doctor's notes stating that Plaintiff was not able to work mandatory overtime, which included notes from NYU's very own health center. When Plaintiff refused to work overtime due to his disability, he was suspended and later terminated. NYU did not engage in the interactive process with Plaintiff to reasonably accommodate his disability.

3. During the times of his suspension and termination, Plaintiff was a member of the Union. In taking the actions described herein, NYU breached the collective bargaining agreement with the Union and the Union unreasonably failed to grieve the adverse employment actions taken against Plaintiff, violating its duty of fair representation to him.

## JURISDICTION AND VENUE

4. The claims in this action arise under the Americans with Disabilities Act, 42 U.S.C. §12101 *et seq.* (the "ADA"), New York City Human Rights Law, Administrative Code §8-107 *et seq.* (the "NYCHRL"), and Section 301 of the Labor Management Relations Act, 29 U.S.C. §151 *et seq.* (the "LMRA").

5. Jurisdiction of this Court is founded on the above federal statutes and 28 U.S.C. §§1331 and 1343.

6. The claims asserted under the NYCHRL arise from the same facts and circumstances as the claims arising under federal law and are within this Court's supplemental jurisdiction under 28 U.S.C. §1367(a).

7. Venue is appropriate in this Court under 28 U.S.C. §1391(b) as the acts or events giving rise to the claims occurred within Southern District and the residence of Defendants is within the Southern District.

## PROCEDURAL HISTORY

8. On August 8, 2014, Plaintiff filed a verified complaint (the "August 2014 Complaint") with the New York State Division of Human Rights ("NYSDHR") alleging disability, age and national origin discrimination under the New York Human Rights Law, New York Executive Law §§290 *et seq.* (the "NYSHRL").

9. The August 2014 Complaint was filed after the Union failed to grieve Plaintiff's suspension from his employment by NYU, as discussed herein.

10. After failing to have his interests adequately protected, on or about January 30, 2015, the NYSDHR issued a finding of no probable cause regarding Plaintiff's suspension.

11. On or about February 26, 2015, the Equal Employment Opportunity Commission issued a Notice of Right To Sue with respect to the August 2014 Complaint, a true and accurate copy of which is attached hereto as Exhibit "A."

12. On October 29, 2014, Plaintiff filed a verified complaint (the "October 2014 Complaint") with the NYSDHR alleging disability discrimination and retaliation under the NYSHRL.

13. The October 2014 Complaint was in connection with Plaintiff's termination from his employment by NYU, as discussed herein.

14. On or about April 21, 2015, the NYSDHR issued a probable cause determination concerning the October 2014 Complaint.

## PARTIES

15. Plaintiff is an individual who currently resides in the County of Kings, State of New York.

16. At all times herein mentioned, Plaintiff was employed by NYU.

17. Upon information and belief, Defendant NYU School of Medicine is a division of New York University, a not-for-profit education corporation, and a component of Defendant NYU Langone Medical Center.

18. NYU's principal place of business is located in the County of New York, State of New York.

19. NYU is an "employer" and "covered entity" as defined by the ADA and the NYCHRL.

20. Upon information and belief, the Union is an unincorporated association, with its principal place of business located in the County of New York, State of New York.

21. The Union is a "labor organization" as defined by the LMRA.

22. NYU and the Union are/were parties to a collective bargaining agreement, specifically a Collective Bargaining Agreement between the League of Voluntary Hospitals and Homes of New York and 1199SEIU United Healthcare Workers East, effective June 1, 2009 through April 30, 2015 (the "CBA").

23. Upon information and belief, the CBA replaced a prior collective bargaining agreement between NYU and the Union, effective July 1, 2007 through September 30, 2011.

24. Upon information and belief, Defendant Mark Raymond ("Raymond") is an individual employed by NYU who supervised and/or managed Plaintiff during his employment.

25. Upon information and belief, Defendant Brian Imperiale ("Imperiale") is an individual employed by NYU who supervised and/or managed Plaintiff during his employment.

**FACTUAL ALLEGATIONS**

26. Plaintiff commenced his employment with NYU in 1997 in the Department of Laboratory Animal Resources.

4

27. Initially, Plaintiff worked in the wash room in the Berg Animal Facility, where he cleaned animal cages.

28. In or about Spring/Summer of 1997, NYU performed repairs to the facility.

29. During the construction, Plaintiff worked in the wash room, which had little to no ventilation or air conditioning while he was performing his duties.

30. One day, during construction, Plaintiff began having difficulty breathing and was forced to run out of the room. When he finally got outside, Plaintiff's supervisor asked what was wrong, to which Plaintiff replied that he could not breathe. It was suggested that Plaintiff visit NYU's health services.

31. After being seen at NYU's health services, the doctor advised Plaintiff that he had an asthma attack and was told to visit his primary care physician. Plaintiff then visited his primary care physician, who confirmed that Plaintiff was an asthmatic.

32. At no time prior to his employment with NYU had Plaintiff suffered an asthma attack.

33. Plaintiff advised his manager at the time of his diagnosis, who later transferred Plaintiff to the Skirball Animal Facility.

34. As part of his duties in the Skirball Facility, Plaintiff was responsible for, among other things, taking the clean animal cages from the washer, replacing the bedding in the cages, and filling water bottles.

35. Although he was in a different building, Plaintiff's asthma attacks continued.

36. In or about 2002, while Plaintiff was still working in the wash room, there was a breakout in the center causing many animals to get sick. Due to the breakout, NYU requested that employees assist the animal technicians in the facility and Plaintiff volunteered.

5

37. During this time, Plaintiff's doctor noticed an improvement in Plaintiff's breathing. Plaintiff explained that he had been working in a different department in the building. The doctor determined that the conditions in the wash room were causing Plaintiff's continued asthma attacks.

38. Based on his examination, on September 11, 2002, Plaintiff's doctor wrote a note to NYU asking to accommodate Plaintiff's disability by not stationing him in the wash room because his brittle asthma was aggravated when working in the room.

39. Raymond, the manager of the animal facilities at NYU at the time, initially refused Plaintiff's request, advising that Plaintiff was using his illness to obtain a new position and that Raymond did not have to do what the doctor recommended.

40. At some point thereafter, Plaintiff was transferred to the position of Animal Research Technician I, the position he maintained until his termination in 2014.

41. Although his condition improved after being transferred, Plaintiff still endured asthma attacks at work and, as a result, had to miss work intermittently.

42. Nevertheless, on October 26, 2005, NYU issued Plaintiff a written warning because he was "out sick six times on four occasions."

43. The warning further stated, among other things, that Plaintiff would not be able to return to work without a note.

44. On or about October 27, 2005, Plaintiff provided a doctor's note to NYU, which stated that Plaintiff's absences were due to his medical condition.

45. On or about October 31, 2005, Plaintiff responded to the written warning stating that he only used his sick time when he was recommended to do so by his physician.

46. Plaintiff further stated that he never abused his sick time privileges and noted that NYU was aware of his medical history based on his prior notes from his physician and NYU health services.

47. In his response, Plaintiff advised that he believed the warning was a form of harassment.

48. In early 2006, Plaintiff provided NYU with additional doctor's notes to explain his absences due to his health condition.

49. On or about July 14, 2006, the facility at NYU was being painted and the strong odor of the paint caused Plaintiff to have difficulty breathing.

50. When he went to the restroom to try and alleviate his coughing, Plaintiff encountered Raymond and another employee who asked Plaintiff what was wrong.

51. Plaintiff replied that the paint in the facility was making it difficult from him to breathe, further noting that, in the past, the painting had been performed during non-working hours.

52. Raymond told Plaintiff that if he was an asthmatic, he should not be working at the facility.

53. When Plaintiff asked if Raymond was telling him to find another job, Raymond simply replied that Plaintiff should visit health services prior to leaving work.

54. Plaintiff complied by visiting health services that day and provided NYU with a note from health services stating that he could not return to work until July 17, 2006.

55. Upon information and belief, at some point between 2006 and 2008, the Union entered into a collective bargaining agreement with NYU to become the exclusive collective bargaining representative of covered employees.

56. In or about March 2008, certain employees were asked to undergo training at the Berg Facility.

57. While Plaintiff had not been required to go to the training in prior years, he was advised that the Union was now demanding that Plaintiff attend.

58. Plaintiff stated his concern about his asthma and then sought to speak the human resources director, Robert Gardner ("Gardner"). Plaintiff was told by his supervisor that Gardner had reiterated the sentiments of Raymond, stating that if Plaintiff is an asthmatic, he should not be working at the facility.

59. According to an undated and unsigned note, Raymond allegedly responded to Plaintiff's request to be excused from the training with a purported "effort" to accommodate his medical needs. The note suggested that Plaintiff be sent to health services for a full evaluation and, in conjunction that that evaluation, also be sent to environmental services to be fitted for a powered air breathing respirator.

60. As discussed herein, Plaintiff was not fitted for the power respirator recommended by Raymond.

61. In May 2008, Plaintiff complained about pain in his chest while he was changing cages in one of his assigned rooms.

62. Due to poor ventilation in the room and new plastic cages that were being used, Plaintiff began experiencing difficulty breathing.

63. Plaintiff asked his supervisor if he could be moved to another room or be given a bigger changing station because the conditions in the room were affecting his breathing.

64. Raymond refused Plaintiff's request, stating that he could not make the accommodation because then other employees would make similar requests.

65. Plaintiff broke down crying as a result of NYU's continued improper treatment of him.

66. Although there was no follow up with Plaintiff concerning the power respirator that was allegedly discussed in or about March 2008, in December 2008, Raymond was advised by NYU's Environmental Health and Safety Specialist II that a power respirator could be dangerous for Plaintiff given the "sensitive and unpredictable nature of brittle asthma and the potential hazards of the use of respirators for people with certain pre-existing health conditions …."

67. NYU's specialist further noted that the use of "PAPR respiratory equipment that would be worn while performing physical labor represents the potential for an increase in the 'physiological burden' and mandates medical re-evaluation before the employee is assigned to different areas the PAPR equipment is provided to the employee."

68. Raymond was advised that Plaintiff's physician should be the individual who recommends Plaintiff's use of a respirator and that documentation of the recommendation should be provided to NYU before the respirator could be issued.

69. On January 5, 2009, Raymond emailed Plaintiff's supervisor, Lillian Rodriguez ("Rodriguez"), to inquire whether Plaintiff had met with his physician "regarding his condition."

70. Raymond stated that environmental services would not meet with Plaintiff until his doctor cleared the use of the power air-purifying respirator equipment.

71. Again, there was no follow up with Plaintiff about a respirator until in or about 2014, when Plaintiff failed a test for use of a powered respirator. At no time did Plaintiff's physician provide documentation to NYU permitting Plaintiff to use a power respirator.

72. Plaintiff continued to suffer from asthma attacks due to the working conditions he was subjected to by NYU.

73. Yet, Plaintiff continued to perform his duties and exceed NYU's expectations of him, as indicated in his October 15, 2013 performance evaluation.

74. In his October 2013 evaluation, Plaintiff's supervisor, Rodriguez, stated, among other things, that Plaintiff continued to "impress [her] year after year," that his "positive attitude when faced with challenges ... is enlightening[]," and that it "has been a pleasure working with [Plaintiff] and look forward to another year."

75. The evaluation confirmed that despite the treatment he had endured, Plaintiff remained a dedicated employee of NYU.

76. Although Plaintiff's health was not improving, rather than accommodate his condition, NYU continued to place unreasonable demands on Plaintiff, which culminated in 2014 when NYU began demanding that Plaintiff work "mandatory overtime."

77. Prior to 2014, Plaintiff rarely, if ever, worked overtime and it was never a condition of his employment.

78. Indeed, Plaintiff's job description, as contained in the October 2013 evaluation, makes no mention of the number of hours an Animal Research Technician I is required to work in order to perform his or her duties.

79. Pursuant to the CBA, overtime is issued first on a voluntary basis, and then on a compulsory basis when there is an emergency or lack of volunteers.

80. Due to his condition, Plaintiff was advised by health care providers, including his physician at NYU, that he could not work overtime hours.

81. In addition, Plaintiff was fearful about working overtime hours because it meant that he would not be surrounded by his co-workers. This fear was justified because when Plaintiff suffered prior asthma attacks while at work, he had difficulty communicating with others and