Rodriguez would accommodate him to the emergency room realizing he was suffering an attack. If left alone during overtime hours, Plaintiff's life was being put in jeopardy as Plaintiff could have suffered an attack without the ability to communicate for help or otherwise be assisted by co-workers.

82.     Nevertheless, Imperiale demanded that Plaintiff work mandatory overtime for NYU without providing reasons as to why the overtime work was necessary.

83.     On March 19, 2014, Plaintiff presented Imperiale with a doctor's note from NYU health services stating that Plaintiff could work regular hours but that he could not work overtime.

84.     The following day, March 20, 2014, Imperiale issued Plaintiff a "Final Written Warning with Suspension" for alleged refusal to perform a task assigned to him by his supervisor, i.e. work mandatory overtime.

85.     At no time prior to this warning did Plaintiff receive a prior warning about failure to perform tasks.  This was the first written warning Plaintiff received since October 25, 2005, when NYU complained about the number of absences Plaintiff was taking while caring for his condition.

86.     During the meeting at which the warning was issued, a Union delegate was present but failed to protect Plaintiff's interests.

87.     Although Plaintiff advised the Union that he objected to the written warning, a grievance was never filed by the Union on Plaintiff's behalf.

88.     Plaintiff was suspended effective March 21, 2014 for three (3) days without pay.

89.     At the conclusion of his three (3) day suspension, Plaintiff attempted to return to work.

90.     However, on or about March 31, 2014, Imperiale advised Plaintiff that until he presented a doctor's note stating that he is able to work with no restrictions, he was not allowed to work.

91.     Thereafter, Plaintiff was put on three (3) weeks of unpaid disability leave.

92.     On or about April 10, 2014, Plaintiff was tested for a power respirator at NYU, which he failed because of his difficulty breathing.

93.     On or about April 11, 2014, Plaintiff provided NYU with a doctor's note advising that Plaintiff could work his normal hours but no overtime.

94.     On or about April 24, 2014, Plaintiff received a letter from NYU stating that he could return to work without working overtime, but that this "accommodation" would end effective May 6, 2014.

95.     Plaintiff returned to work on or about April 28, 2014.

96.     On or about May 6, 2014, Plaintiff provided NYU with another doctor's note stating that he could not work mandatory overtime.

97.     Unsatisfied with the notes provided by one of NYU's own doctors, on June 26, 2014, NYU sent Plaintiff to a different doctor for a medical examination.

98.     The "independent" medical examination (the "IME") concluded that Plaintiff could work mandatory overtime, but no more than two (2) to three (3) times per month.

99.     On or about July 22, 2014, Plaintiff provided NYU with a doctor's note stating that he could not work mandatory overtime because his lung function had worsened.

100.    Despite the doctor's notes, NYU relied solely on the IME in continuing its demands that Plaintiff work mandatory overtime.

12

101.    Rather than protect Plaintiff from the continuing discrimination, in or about September 2014, the Union asked Plaintiff if he would drop his claims against NYU (i.e. the August 2014 Complaint) if he was paid for his unpaid suspension and leave.

102.    Plaintiff rejected the offer, stating that he would not drop his case because he was tired of the continued harassment by NYU.

103.    On or about October 27, 2014, Plaintiff was approached by Rodriguez to work overtime for another room that had about three hundred sixty (360) additional cages.

104.    Plaintiff told Rodriguez that he could not perform the overtime work requested due to his asthma.

105.    Imperiale then called Plaintiff and demanded that he work mandatory overtime. Plaintiff again refused due to his health condition.

106.    On October 29, 2014, Plaintiff was called into Rodriguez's office to speak with Imperiale, with a Union delegate present.  During the meeting, Plaintiff was terminated.

107.    Plaintiff's termination letter states that Plaintiff was terminated for "continued refusal to perform tasks."

108.    On October 30, 2014, Plaintiff filed a complaint with his Union and requested that a grievance be filed on his behalf.

109.    The same day, the Union advised NYU that it was grieving Plaintiff's termination, but Plaintiff received no further communication about the grievance.

110.    After his termination, on or about November 11, 2014, Plaintiff's doctor wrote to NYU advising that Plaintiff could not work mandatory overtime.  NYU never responded.

111.    Further demonstrating its animus towards his disability is the fact that on December 22, 2014, NYU protested Plaintiff's receipt of unemployment benefits.  Although a hearing was granted and held on or about January 15, 2015, NYU failed to appear.

112.    On January 12, 2015, Plaintiff received a letter from the Union stating that his health coverage was terminating, which confirmed that the Union had abandoned Plaintiff's grievance.

113.    Since that date, Plaintiff has received no further communications from the Union.

## COUNT ONE

**(Failure to Reasonably Accommodate in Violation of the ADA Against NYU)**

114.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

115.    Plaintiff's medical condition as described in this Complaint constitutes a disability within the meaning of the ADA.

116.    NYU violated the ADA by failing to accommodate Plaintiff's known physical limitations brought on by his disability when it suspended his employment.

117.    As a result of NYU's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT TWO

**(Discrimination Based on Disability in Violation of the ADA Against NYU)**

118.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

119.    Plaintiff's medical condition as described in this Complaint constitutes a disability within the meaning of the ADA.

14

120.   NYU regarded Plaintiff as disabled in that it perceived him as substantially limited in his ability to perform major life activities including but not limited to working, performing manual tasks, and breathing.

121.   NYU violated the ADA when it discriminatorily suspended Plaintiff's employment because of his known and/or perceived disability.

122.   As a result of NYU's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT THREE

### (Retaliation in Violation of the ADA Against NYU)

123.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

124.   Plaintiff participated in protected activities under the ADA by, among other things, requesting a reasonable accommodation and complaining of continued harassment.

125.   By suspending Plaintiff's employment, NYU unlawfully retaliated against Plaintiff in violation of the ADA.

126.   As a result of NYU's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT FOUR

### (Discrimination Based on Disability in Violation of the ADA Against the Union)

127.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

128.   The Union tacitly acquiesced in and/or ratified NYU's discrimination of Plaintiff on the basis of his disability when it failed to protect Plaintiff's interests in violation of the ADA.

15

129.   As a result of the Union's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT FIVE

### (Failure to Reasonably Accommodate in Violation of the NYCHRL Against NYU)

130.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

131.   Plaintiff's medical condition as described in this Complaint constitutes a disability within the meaning of the NYCHRL.

132.   NYU violated the NYCHRL by failing to accommodate Plaintiff's known disability.

133.   As a result of NYU's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT SIX

### (Discrimination Based on Disability in Violation of the NYCHRL Against NYU)

134.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

135.   Plaintiff's medical condition as described in this Complaint constitutes a disability within the meaning of the NYCHRL.

136.   The NYCHRL prohibits the discharge of an employee based on an employee's actual or perceived disability.

137.   NYU violated the NYCHRL by suspending and terminating Plaintiff because of his known disability and/or perceived disability.

16

138.    As a result of NYU's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT SEVEN

### (Retaliation in Violation of the NYCHRL Against NYU)

139.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

140.    Plaintiff participated in a protected activity under the NYCHRL by, among other things, requesting a reasonable accommodation and complaining of continued harassment.

141.    By suspending and terminating Plaintiff's employment, NYU unlawfully retaliated against Plaintiff in violation of the NYCHRL.

142.    As a result of NYU's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT EIGHT

### (Disability Discrimination in Violation of the NYCHRL Against the Union)

143.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

144.    The Union aided, abetted, tacitly acquiesced in and/or ratified NYU's discrimination of Plaintiff on the basis of his disability when it failed to protect Plaintiff's interests in violation of the NYCHRL.

145.    As a result of the Union's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and

17

emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT NINE

### (Disability Discrimination in Violation of the NYCHRL Against the Individual Defendants)

146.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

147.    As a result of the aforementioned actions, Defendants Raymond and Imperiale (the "Individual Defendants") discriminated against Plaintiff on account of his disability with respect to the terms, conditions and privileges of his employment in violation of the NYCHRL.

148.    The Individual Defendants violated the NYCHRL by aiding, abetting, inciting and coercing the unlawful discrimination set forth in this Complaint.

149.    As a result of the Individual Defendants' unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, past and future physical and emotional distress, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT TEN

### (Breach of Duty of Fair Representation Against the Union)

150.    Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

151.    At the relevant times herein, Plaintiff was a member in good standing of the Union.

152.    The Union failed to grieve and/or arbitrate Plaintiff's suspension and termination by NYU, amounting to arbitrary, discriminatory and bad faith conduct by the Union in violation of its duty of fair representation to Plaintiff.

18

153.   As a result of the Union's unlawful acts, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits, and other damages including the attorneys' fees and costs incurred in prosecuting this action.

## COUNT ELEVEN

### (Breach of the Collective Bargaining Agreement Against NYU)

154.   Plaintiff repeats and realleges the preceding paragraphs as if fully set forth herein.

155.   Article IV of the CBA states, in relevant part, that NYU and the Union shall not discriminate against any employee based on, among other things, disability and that NYU shall be permitted to take actions legally required to comply with the ADA after notice to the Union.

156.   NYU breached the terms of the CBA when it discriminated against Plaintiff on the basis of his disability.

157.   Upon information and belief, NYU breached the CBA because it did not provide notice to the Union of the actions it intended to take against Plaintiff before his termination and suspension.

158.   Article VII of the CBA states, in relevant part, that overtime should first be given to employees who volunteer for same prior to overtime being issued on a mandatory basis.

159.   Upon information and belief, NYU breached the CBA because it did not exhaust its requirement to seek volunteers to work overtime before demanding that Plaintiff work mandatory overtime.

160.   Article XXIX of the CBA permitted NYU to discharge, suspend or discipline employees "for cause."

161.   NYU's purported reason for terminating Plaintiff, i.e. the failure to work mandatory overtime, was not cause but was a pretext for discrimination in breach of the CBA.

19

162.    As a result of NYU's breach of the CBA, Plaintiff has suffered and continues to suffer damages, including past and future lost wages and benefits and other damages.

## JURY DEMAND

163.    Plaintiff demands a trial by jury on all claims properly triable by a jury.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully requests that this Court accept jurisdiction over this matter and award him:

(a)    Appropriate injunctive relief, including but not limited to reinstatement and an order restraining Defendants from engaging in further discriminatory and retaliatory conduct asserted herein or, in or, in lieu of reinstatement, award him front pay (including benefits);

(b)    Back pay, wages and other lost prerequisite and benefits in an amount to be determined at trial;

(c)    Compensatory damages including damages for emotional distress, humiliation and pain and suffering;

(d)    Pre-judgment and post-judgement interest;

(e)    Reasonable attorneys' fees and costs incurred in the prosecution of this action;

(f)    Punitive damages for Defendants' malicious, willful and/or reckless disregard for Plaintiff's statutory rights; and

20

(g)     Such other legal and equitable relief as may appear to this Court to be just and proper.

Dated: Syosset, New York
      April 30, 2015

                                   **LAW OFFICES OF YALE POLLACK, P.C.**

                                   By: _____
                                         Yale Pollack, Esq.
                                 *Attorneys for Plaintiff*
                                 66 Split Rock Road
                                 Syosset, New York 11791
                                 (516) 634-6340